# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| KELLY P. MARCIMO,<br>        Plaintiff<br><br>vs.<br><br>THERMOSPAS, INC.,<br>STEVEN DAVIDSON, and<br>ANDREW P. TOURNAS,<br>        Defendants | **CIVIL ACTION<br>NO. 09-40193-TSH** |

## ORDER RE:  MOTION TO DISMISS
### December 14, 2010

**Hillman, M.J.,**

### Nature of the Proceeding

By consent of the parties, this matter has been assigned to me for all purposes pursuant to 28 U.S.C. §636(c).  This Order addresses the Motion to Dismiss (Docket No. 24) filed by the Defendant, Thermospas, Inc.

### Nature of the Case

Kelly P. Marcimo (Ms. Marcimo) filed a Complaint And Jury Demand (Docket No.1)(Complaint) against Thermospas, Inc. (Thermospas), Andrew P. Tournas (Tournas) and Steven Davidson (Davidson) seeking damages for: unlawful discrimination based on gender, in

violation of Mass.Gen.L. ch. 151B ("Chapter 151B") (Count I); interference with the right to a workplace free of discrimination and/or retaliation, in violation of Chapter 151B (Count II); unlawful retaliation, in violation of Chapter 151B (Count III); and breach of contract (Count IV).

**Background**

On November 5, 2009, Ms. Marcimo filed her Complaint against the Defendants alleging claims under Massachusetts state law for gender discrimination and retaliation. Defendants filed their Answer (Docket No. 8) on January 25, 2010. Defendants' affirmative defenses included an assertion that Ms. Marcimo's claims were barred by the statute of limitations. On July 12, 2010, Marcimo filed a Motion To Amend Complaint (Docket No. 21), in which she sought to replace her Chapter 151B claims with similar claims for violation of federal law, and a state law claim for discrimination for filing a worker's compensation claim. Specifically, Marcimo sought to amend the complaint to assert the following claims against the Defendants: (1) gender discrimination, including a claim for constructive discharge, in violation of federal law, specifically, 42 U.S.C. §2000e-2(a)(1)(Count I); retaliation for filing an administrative complaint, in violation of 42 U.S.C. §2000e-3(a)(Count II); and (3) unlawful termination for filing a worker's compensation claim, in violation of Mass.Gen. L.ch. 152, § 75B(2).

Defendants opposed the motion to amend on the grounds that: (1) the Complaint had been filed eight months previously and they would be prejudiced and subjected to an unfair burden if forced to investigate "new claims"; (2) the new claims were not addressed in Marcimo's administrative complaint and are barred by the statue of limitations; and (3) the Court lacks subject matter jurisdiction over the new claims asserted in the Amended Complaint. On

August 20, 2010, this Court allowed Marcimo's motion to amend her Complaint and the Amended Complaint (Docket 28) was filed that same date.[1]

Marcimo's Amended Complaint also dropped the individual Defendants, Davidson, Sales Manager at Thermospas and Tournas, President and Owner of Thermospas. Therefore, as to the individual Defendants, Ms. Marcimo has dismissed her claims against them, *without prejudice*.[2]

## Facts

The following facts are taken from the Complaint and Exhibits filed by the parties, with all inferences drawn in favor of the Plaintiff.

Thermospas sells and installs residential hot tubs or spas, which it markets through television advertising and infomercials. Prospective customers contact Thermospas by calling a toll free number, or via e-mail. Thermospas then arranges for one of its sales representatives to call on customers in their homes and persuade them to sign contracts. Thermospas sales representatives do not personally solicit business and are compensated solely through sales commissions. Sales representatives are not assigned any exclusive territories and there are not

---

[1] Defendants inexplicably filed their motion to dismiss while Plaintiff's motion to amend her complaint was pending. Obviously, the better practice would have been to wait until after the Court had ruled on the motion to amend and the amended pleading had been filed. Nonetheless, Plaintiff had an opportunity to file a written opposition to the motion to dismiss and both parties argued their respective positions at the hearing. Indeed, in her opposition, Plaintiff expressly noted that the motion to dismiss was premature, but that she would address it prior to her motion to amend being allowed in order to permit the Court to hold a single hearing. *Mem. Of L, In Opp. To Def's Mot. To Dismiss An In Further Supp. Of Pl's Mot. To Amend Complaint* (Docket No. 27), at n. 3.
    Although there was ample opportunity to do so before, during, and after the hearing, neither party requested leave to make any supplemental filings. Therefore, it is apparent to the Court that Defendants' precipitant filing did not prejudice the parties' *ability* to fully address whether the Amended Complaint should be dismissed. However, as discussed *infra*, whether as the result of the unusual posture of this case or otherwise, I find that the parties have not adequately addressed all the issues raised by the motion to dismiss.

[2] In her memorandum, Ms. Marcimo acknowledged that she intentionally did not name Davidson as a party in the Amended Complaint and stated that if her motion to amend were allowed, she was content to have her claims against him dismissed. Ms. Marcimo does not address whether it was her intent to drop Tournas. However, by failing to name Tournas as a party in the Amended Complaint, Ms. Marcimo has also dismissed her claims against him.

set boundaries with respect to their territories. However, because the sales representatives meet prospective customers in their homes, Thermospas practice is to give leads to sales representatives who live within a two hours drive of customers. Consequently, there is a substantial degree of overlap with respect to the number of sales representatives covering sales areas.

Ms. Marcimo worked for Thermospas from July 18, 1997 to September 19, 2008; she worked out of her home in Massachusetts. When she was hired, Thermospas had thirteen other sales representatives, all of whom were male. At the time Ms. Marcimo left Thermospas, there were eighty-four sales representatives in the Northeast Region, nine of whom were female and four of whom potentially shared her sales area, in whole or in part.

From 2000 through 2006, Thermospas referred three to five potential customers to Ms. Marcimo per week. During that period, Ms. Marcimo sold between forty-five and seventy-five spas annually. In 2003, she earned $66,083 in commissions; in 2004, $75,532 and in 2005 $82,679. In May 2004, Ms. Marcimo's manager cited her as a "top closer and highly professional employee".

On July 10, 2006, Ms. Marcimo suffered a serious shoulder injury while carrying her sales case during a customer call. She was unable to work for a period and was awarded workers' compensation. For the first six months of 2006, prior to her injury, Ms. Marcimo earned $38,049 in commissions.

In mid-April 2007, Ms. Marcimo notified Thermospas that she was physically able to return to work; her doctor certified her as fit for duty as of May 1, 2007.[3] After Ms. Marcimo returned from leave, Thermospas began to treat her differently. Although in her first two weeks back she made three sales calls, obtaining one contract[4], Thermospas informed her that she would have to be retrained with new sales recruits for a week long period, at her own expense. During the training period, she would not be provided any leads and therefore, could not make any sales. After Ms. Marcimo protested, Thermospas reduced her training period to two days and paid her expenses. Thereafter, Thermospas did not provide Ms. Marcimo with any customer referrals for three weeks. From June 5 through June 30, 2007, Ms. Marcimo received only seven referrals, only two of which were "bona-fide" sales opportunities.[5] In July 2007, Ms. Marcimo received only five sales appointments, only one of which was a bona-fide sales opportunity (this opportunity did, in fact, result in a sale). In August 2007, Thermospas made five appointments for Ms. Marcimo, two of which were bona-fide sales opportunities (both of which Ms. Marcimo brought to contract). In September 2007, Ms. Marcimo was given only two sales appointments. One of these appointments was the result of a male colleague who voluntarily gave up a lead to Ms. Marcimo because he recognized the disparity in the allocation of appointments between male and female sales representatives.

---

[3]Ms. Marcimo had to undergo surgery in December 2007 to reattach cartilage in her shoulder, followed by a long course of physical therapy. It is unclear from the Amended Complaint whether Ms. Marcimo lost any work time as a result of the surgery and follow-up physical therapy.

[4]A second customer signed a contract, but then rescinded within his three day right of rescission.

[5]A "bona fide" sales opportunity is one where both homeowners are at home and wiling to hear a sales presentation, as opposed to a mere "site inspection".

On October 19, 2007, during the weekly teleconference of sales representatives, Ms. Marcimo tried to bring up the disparity of assignment between male and female representatives. Ms. Marcimo was told that no complaints would be heard as the distracted from the "strictly positive" atmosphere required at sales conferences.

During this period, Thermospas was disproportionately allocating fewer sales appointments to female representatives in general. A group of female sales representatives, including Ms. Marcimo, attempted to complain to Thermospas' Northeast Regional Sales Manager, Tom Peterson at November 9, 2007 sales meeting. Peterson told them they were imagining things.

On April 8, 2008, Peterson informed Ms. Marcimo that Davidson, Thermospas' Director of Sales, was closing down her area for poor performance. Davidson had been appointed as Director of Sales a month before and had never spoken with Ms. Marcimo. Ms. Marcimo vehemently protested and the next day (April 9), the president of Thermospas, Tournas, reversed the decision. Davidson then immediately sent Ms. Marcimo an e-mail requiring her to attend training in the main office in order to raise her closing rate, based on her performance the previous fifteen months. As of April 2008, Ms. Marcimo had only been back at work for nine months.

On April 10, 2008, Ms. Marcimo wrote Davidson an e-mail directing his attention to the disparity between leads provided to male and female representatives in the region. She also noted that a male employee had been rehired in the area despite the fact that the area could not support another representative; this employee had been given numerous appointments. The next day, Ms. Marcimo wrote an e-mail to Davidson, with a copy to Tournas, complaining that she

had received only thirty sales appointments in the eleven months since she had returned from medical leave and that is was unfair to judge her performance on that basis.

Davidson replied in an e-mail dated April 13, 2008, in which he stated that Ms. Marcimo and other underperforming representatives, regardless of gender, would be required to take training classes in order to continue receiving leads. In the e-mail, Davidson noted that Ms. Marcimo's performance for the previous fifteen months was unacceptable; this would include the four month period that she was on medical leave. In that same e-mail, Davidson directed Ms. Marcimo to attend an all-day training session on April 17, 2008, which was immediately before she was to take a previously scheduled vacation.

Ms. Marcimo sent Davidson an e-mail on April 13, 2008 in which she informed him that she would be meeting with the federal Equal Employment Opportunity Commission ("EEOC") in Boston the next day. On April 14, 2008, Ms. Marcimo filed a complaint with the EEOC alleging that Thermospas was discriminating against her in the terms and conditions of her employment on account of sex. On April 15, 2008, Ms. Marcimo filed a complaint with the Connecticut Commission on Human Rights ("CCHR"). In her administrative complaint, Ms. Marcimo alleged that after returning from her surgery, she received fewer sales leads than she had previously; she further alleged that males sales representatives were given many more leads than female sales representatives and that she had almost been terminated as the result of poor sales. *See Amended Complaint*, at *Ex. C.*

Ms. Marcimo did not attend the April 17, 2008, training session because it conflicted with her previously scheduled vacation. She was then told that no new training would be held until June and she would not receive any sales appointments before she received the training.

Ms. Marcimo, in fact, did not receive any new appointments prior to being retrained and Thermospas did not schedule her for retraining until the last of three group training sessions which was held on July 15 and July 16, 2008. At the close of the training, Davidson told Ms. Marcimo that she had not demonstrated competence and that she needed a "lot of work." He also stated that her area was overstaffed by at least two sales representatives and that he would not be able to provide her with many sales appointments.

In the four weeks after the retraining, Ms. Marcimo assigned only four sales opportunities to Ms. Marcimo. On August 20, 2010, Ms. Marcimo sent a letter to Tournas outlining her recent treatment by Thermospas and indicating that such treatment had made it impossible for her to earn a living and support her family. She also stated that her working conditions had become intolerable.

On September 5, 2008, Ms. Marcimo sent the EEOC representative assigned to her case a letter updating her employment status. In that letter, she outlined further grievances against Thermospas, including that: her supervisor had used vulgar language during a training session; her supervisor's negative feedback concerning her performance at the training; the fact that on August 13, 2008, she had sent Thermospas's Human Resource Department a formal complaint regarding her supervisor's sexually harassing conduct during their meeting; and that she was not receiving sufficient leads to allow her to support herself. She asked that her EEOC complaint be moved forward as quickly as possible. *Mem. Of Law In Opp. To Def's Mot. To Dismiss And In Further Supp. Of Pl's Mot. To Amend Complaint* (Docket No. 27)("*Pl's Opp.*"), at *Ex. C* (*Attachment No. 3*).

8

After Ms. Marcimo's August 20th letter to Tournas, Thermospas directed only two more sales appointments to Ms. Marcimo, on August 28, 2010 and September 19, 2010. On September 19, 2010, Ms. Marcimo resigned her position.

**Discussion**

*Motion to Dismiss under Rule 12(b)(1): Standard of Review[6]*

Federal courts are forums of limited subject matter jurisdiction. *Picciotto v. Continental Cas. Co.*, 512 F.3d 9, 17 (1st Cir. 2008). Jurisdiction is "authorized by the Constitution and expressly conferred by Congress." *Destek Group, Inc. v. State of New Hampshire Public Utilities Comm'n*, 318 F.3d 32, 38 (1st Cir. 2003). "When a district court considers a Rule 12(b)(1) motion, it must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor. The district court may also 'consider whatever evidence has been submitted, such as the depositions and exhibits submitted.'" *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010)(internal citations and citation to quoted case omitted).

---

[6] Both parties have filed matters outside the pleadings. The First Circuit does not treat failure to exhaust administrative remedies under Title VII as jurisdictional and therefore, the question must be asked as to whether Defendant's motion should be converted into one for summary judgment. *See Ilgenfritz v. Hon. Robert Gates, Sec. Of Def.*, 2010 WL 2978090, Civ.Act. No. 09-1502 (W.D.Pa. Jul. 26, 2010)(failure to exhaust administrative remedies is not jurisdictional and therefore, is subject to motion to dismiss under Rule 12(b)(6) or summary judgment); *Noisette v. Geithner*, 693 F.Supp.2d 60, 65 (D.D.C. 2010)(because exhaustion requirement under Title VII is not jurisdictional, motion to dismiss for failure to exhaust administrative remedies is more appropriately analyzed under Rule 12(b)(6) and matters outside of pleadings will convert motion to one for summary judgment). The First Circuit has stated that it is appropriate to raise the issue of whether a claim should be dismissed for failure to exhausted by means of a Rule 12(b)(1) motion. *See United States v. Lahey Clinic Hosp., Inc.*, 399 F.3d 1, 8 n. 6 (1st Cir. 2005). Accordingly, the First Circuit would appear to follow those courts which have held that with respect to motions to dismiss for failure to exhaust administrative remedies, consideration of matters outside the pleadings is appropriate as long as the parties have sufficient opportunity to develop the record and the court does not resolve factual questions. *See Baker v. Donald*, 2009 WL 902142 (M.D.Ga. Mar. 31, 2009); *accord Hendrick v. Almar, Inc.*, 2009 WL 2242428, Civ. No. 09-139-P-S (D.Me. 2009)(finding First Circuit case law suggests that motion to dismiss for failure to exhaust should be analyzed under Rule 12(b)(1) rather than Rule 12(b)(6)).

9

In its motion, Thermospas asserts that this Court lacks subject matter jurisdiction over Count I (unlawful termination on account of gender discrimination) and Count II (retaliation for having filed administrative complaint) because the Plaintiff failed to exhaust her administrative remedies with respect to these claims. As to Count III (unlawful termination/violation worker's compensation statute), Thermospas asserts that the Court lacks jurisdiction because pursuant to the terms of Plaintiff's employment agreement, that claim is governed by Connecticut law and had to be filed in Connecticut.

Ms. Marcimo argues that Thermospas has waived the right to seek to dismiss Counts I and II for failure to exhaust administrative remedies. In the alternative, Ms. Marcimo opposes Thermospas' motion as to Counts I & II on the grounds that she did exhaust her administrative remedies with respect to these claims. As to Count III, Ms. Marcimo argues that: the employment contract was not properly authenticated and therefore, is not properly before the Court; the employment contract was unilaterally cancelled by Thermospas and therefore, to the extent any of its provisions would require her to file this claim in Connecticut, such provision would be unenforceable; and even if the contract is valid and the provision in question would not bar her from bringing Count III in this Court.

*Whether Counts I and II should be Dismissed for Failure to Exhaust Administrative Remedies*

Thermospas asserts that Counts I and II should be dismissed for failure to exhaust administrative remedies because she failed to allege a constructive discharge or retaliation claim in the complaint she filed with the EEOC. Plaintiff argues first, that Thermospas has waived this defense by failing to assert it in it first responsive pleading, *i.e.,* its Answer to the original Complaint, and second, the claims alleged in her Amended Complaint are within the scope of the

10

her administrative complaint. In the alternative, Ms. Marcimo argues that she supplemented her complaint to the EEOC two weeks before her resignation when she sent a letter to the EEOC updating the status of her employment; in connection therewith, Ms. Marcimo notes that she filed her administrative complaint *pro se* and can't be expected to have known that a formal amendment was required.

**Whether Thermospas Waived the Defense of Failure to Exhaust Administrative Remedies**

Logic would dictate that where a plaintiff files an amended complaint, the defendant may raise any and all defenses in its amended answer, regardless of whether the defense was asserted in the original answer or other initial responsive pleading. However, at least as to certain affirmative defenses, the Federal Rules of Civil Procedure provide that they must be raised in a party's "first defensive move, be it a Rule 12 motion or a responsive pleading", or the defense is waived. *Manchester Knitted Fashions*, *Inc. V. Amalgamated Cotton Garment & Allied Indus. Fund*, 967 F.2d 688, 69--92 (1st Cir. 1992). That is, "[t]he filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to the amendment of the pleading". *5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure* §1388 (3d ed. 2004 & 2010 Supp.). There is an exception where the availability of a Rule 12 affirmative defense becomes obvious only after the filing of an amended complaint. In such a case, the affirmative defense must be raised in the first responsive pleading to the amended complaint.

Ms. Marcimo is correct that Thermospas did not assert failure to exhaust administrative remedies as an affirmative defense in its Answer (Docket No. 8) to the original Complaint. The question thus becomes whether failure to exhaust administrative remedies is a defense which

must be raised in a party's first responsive pleading and if so, whether it was obvious that such defense was available to Thermospas at the time it filed its Answer to the original Complaint.

Rule 12(h) essentially provides that "[a] party waives any defense listed in Rule 12(b)(2)-(5)" by not asserting all such available defenses in its first Rule 12 motion to dismiss, or responsive pleading, *i.e.,* the defenses of lack of personal jurisdiction, improper venue, insufficiency of process and insufficiency of service of process. While Rule 12(h)'s waiver requirement would appear to be inapplicable to affirmative defenses other than the enumerated defenses, some courts have broadened its application beyond the rule's express scope. *See, e.g., Morrision v. Mahoney*, 399 F.3d 1042 (9th Cir. 2005)(holding that procedural default is affirmative defense which must be raised in first responsive pleading or it is waived and noting that court had recently held that failure to assert statute of limitations defense in first responsive pleading results in waiver).[7] At the same time, as to those defenses not enumerated in Rule 12(b)(2)-(5), the general rule appears to be that failure to raise the affirmative defense in the first responsive pleading will not result in waiver where the defense is raised in a reasonably timely manner and does not result in prejudice or undue surprise to the plaintiff.

Even if I were to find that the First Circuit would adopt an expansive reading of Rule 12(h) to include defenses not enumerated therein, I find that Thermospas has not waived its right to assert the affirmative defense of failure to exhaust administrative remedies. This case is still in its infancy-- Thermospas has raised the affirmative defense in its motion to dismiss, which

---

[7] Express exceptions to the rule include a motion to dismiss for lack of subject matter jurisdiction, which may be raised at any time. *See* Fed.R.Civ.P. 12(h)(3). However, while failure to exhaust administrative remedies will generally bar suit in federal court, it is not a jurisdictional requirement and therefore, it is not clear that the First Circuit would find that assertion of the defense falls within this exception. *See Vera v. McHugh*, 633 F.3d 17 (1st Cir. 2010); *Clockedile v. New Hampshire Dep't of Corrections*, 245 F.3d 1, 4 (1st Cir. 2001).

was filed before the Amended Complaint.(Thermospas has yet to file an Answer to the Amended Complaint.) Furthermore, counsel has just recently entered the case for the Plaintiff and revised her pleadings in a manner which gives her claims better focus and clarity. Under these circumstances, Thermospas's raising of the affirmative defense can hardly be said to be untimely, or to be surprising or prejudicial to Ms. Marcimo. *Accord Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 2000)(defendant may raise affirmative defense of failure to exhaust administrative remedies in any pleading filed in response to further amended complaint, regardless of whether defendant had asserted affirmative defense in earlier responsive pleading).[8]

**Whether Ms. Marcimo Failed To Exhaust Administrative Remedies With Respect To Her Constructive Discharge and Retaliation Claims.**

Thermospas asserts that Counts I and II of the Amended Complaint must be dismissed for failure to exhaust administrative remedied because Ms. Marcimo did not allege that she was constructively discharged or that she was retaliated against in the administrative complaints that she filed with the EEOC and CHRC. While failure to exhaust administrative remedies is not jurisdictional, "a plaintiff's unexcused failure to exhaust administrative remedies effectively bars the courthouse door". *Jorge v. Rumsfeld*, 404 F.3d 556 (1st Cir. 2005).

Ms. Marcimo argues that the constructive discharge and retaliation claims are within the scope of her original discrimination complaint. She further argues that the September 5, 2008 letter she sent to the EEOC outlined further discriminatory actions taken against her by

---

[8] In so holding the Seventh Circuit stated that "a plaintiff's new complaint wipes away prior pleadings, [and therefore] opens the door for defendants to raise new and previously unmentioned affirmative defenses". *Massey*, 196 F.3d at 735. While the court's holding appears broad enough to apply to any affirmative defense under Fed.R.Civ.P. 8(c), other courts have suggested that the holding is necessarily limited to those affirmative defenses which are excluded from Rule 12(b)(2)-(5)'s mandatory waiver language. *See Pruco v. Wilmington Trust Co.*, 618 F.Supp.2d 210, 215 (D.R.I. 2009) .

13

Thermospas since her filing of her original complaint and therefore, in essence, the letter supplemented the complaint. She asks the Court to consider the fact that she was proceeding *pro se* and, therefore, could not have been expected to understand the procedural nuances associated with filing a formal amendment to her claim as opposed to an informal supplement.

Under Title VII, prior to filing a complaint in this Court, the plaintiff must have filed an administrative complaint with the EEOC within a specified period of time (usually 180 or 300 days) after the complained of discrimination.[9] Although in general, a plaintiff's claims brought in federal court are limited to those alleged in the agency complaint, there are times when it is permissible to bring suit with respect to allegations which were omitted from the agency action. *Clockedile v. New Hampshire Dep't of Corrections*, 245 F.3d 1, 3-4 (1st Cir. 2001). "The relevant test in determining whether [a plaintiff] was required to exhaust her administrative remedies ... is whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *Walters v. President and Fellows of Harvard Coll.,* 616 F.Supp. 471, 475 (D.Mass. 1985)(citation to quoted case omitted)(alterations in original); *see also Davis v. Lucent Tech., Inc.*, 251 F.3d 227 (1st Cir. 2001)(scope of investigation rule reflects idea that scope of civil action is not determined by specific language of charge filed with agency, but rather, may encompass acts of discrimination which MCAD investigation could reasonably be expected to uncover).

It is not the scope of the actual investigation pursued that determines what complaint may filed, but what the EEOC investigation could reasonably be expected to 'grow' from the original complaint." *Casella v. MBNA Marketing Systems Inc.*, 2009 WL 1621411, Civ. No. 8-176-B-W,

---

[9]The plaintiff then has ninety days to file in this Court after receiving notice that her complaint was either dismissed or the agency issues a right to sue letter. 42 U.S.C. §2000e-5(f)(1).

*25 (D.Me. Jun. 9, 2009)(citing *Powers v. Grinnell Corp.*, 915 F.2d 34, 39 n. 4 (1st Cir. 1990)). "The civil action may also include 'relief for incidents not listed in the original charge to the EEOC ... [which are] like or reasonably related to the allegations of the EEOC charge, including new acts occurring during the pendency of the charge before the EEOC.'" *Walters*, 616 F.Supp. at 475 (citation to quoted case omitted)(alterations in original). However, the factual statements in the administrative complaint must be sufficient to have alerted the agency as to "an alternative basis of discrimination" which should have been investigated. *Davis*, 251 F.3d at 233.

Ms. Marcimo was acting *pro se* at the time that she filed her administrative complaint and therefore, her "administrative charge is liberally construed in order to afford [her] the benefit of any reasonable doubt" *Lattimore v. Polaroid Corp.*, 99 F.3d 456, 464 (1st Cir. 1996). However, even under the most liberal reading of her administrative complaint, Ms. Marcimo did not assert that she was constructively discharged, nor did she include any factual or legal assertions which would support her retaliation claim. Furthermore, while her September 5th letter to the EEOC arguably alleges incidents which form the basis of her retaliation claim, she never expressly informed the EEOC that her employment with Thermospas had ended, by constructive discharge or otherwise.

As to Ms. Marcimo's retaliation claim, "retaliation claims are preserved so long as the retaliation is reasonably related to and grows out of the discrimination complained of to the agency-- *e.g.,* the retaliation is for filing the agency complaint itself". *Clockedile*, 245 F.3d at 6. At this stage of the proceedings, the relevant facts are that Ms. Marcimo filed an administrative complaint on April 14-15, 2008. She alleges at that shortly after filing the administrative complaint, Thermospas engaged in various incidents of retaliation, specifically: after having to

cancel attendance at a retraining session because of a previously scheduled vacation[10], she was not scheduled for retraining until the last available session and was not given new leads before the retraining was completed; at the close of training, Davidson told Ms. Marcimo that she had not demonstrated her competence and needed a lot of work; and after the retraining, she was given only six sales appointments before her employment with Thermospas ended on September 19, 2008. Taking the facts in a light most favorable to Ms. Marcimo, she has alleged retaliatory action by Thermospas reasonably related to the filing of her agency complaint. Put another way, the retaliatory incidents alleged by Ms. Marcimo occurred soon after the filing of her agency complaint and such incidents can be considered part of the broader patter of discrimination asserted in her agency complaint. Therefore, Thermospas's motion to dismiss Count II for failure to exhaust administrative remedies is denied. *Accord Franceschi v. U.S. Dep't of Veteran Affairs*, 514 F.3d 81, 86 (1st Cir. 2008)(claim of retaliation for filing administrative charge with EEOC is one of narrow exceptions to general rule of exhaustion of administrative remedies-- such claim may normally be bootstrapped onto claim arising out of administrative charge and considered by court even though it was not part of administrative process).

While the rule for retaliation claims was broadened in *Clockedile,* the First Circuit expressly declined to address whether a previously filed EEOC complaint must be amended to include "non-retaliatory but related discrete acts which took place after the discrimination described in the charge" in order for such acts to be subject to judicial review. *Rivera v. Puerto Rico Aqueduct and Sewers Auth.,* 331 F.3d 183, (1st Cir. 2003). Although the First Circuit has not squarely addressed the issue, it is likely that for non-retaliatory claims, it would continue to

---

[10] Ms. Marcimo was advised she would be required to under go retraining and was directed to attend retraining sessions during her previously scheduled vacation prior to her filing her administrative complaint.

require that such claims be addressed within the administrative charge or that they have been within the so-called scope of investigation, that is, that is, that whether her "constructive discharge claim ... a 'distinct discriminatory act' could ... reasonably be expected to grow out of" the claim she asserted in her agency complaint. *See Casella v. MBNA Marketing Systems, Inc.*, 2009 WL 1621411, Civ.No. 8-176-B-W, at *25 (D.Me. Jun. 9, 2009). Ms. Marcimo's only charge in her April 2008 agency complaint is that Thermospas had discriminated against her based on her gender. At the time she filed the complaint, she was still employed. Indeed, at the time of the September 5th letter which she alleges supplemented her complaint, she was still employed. She does not allege that she ever spoke to the EEOC investigator about the fact she was no longer employed by Thermospas never mind the circumstances under which her employment ended. *Accord Id.*, 2009 WL 1621411 at *26 and cases cited therein.

On the record before me, I am *strongly* inclined to find that Ms. Marcimo failed to exhaust her administrative remedies with respect to her constructive discharge claim. At the same time, I do not feel that the parties adequately addressed the legal and factual issues underlying this claim such that the Court can make an informed decision as to whether the charge was within the scope of the EEOC investigation. Therefore, as to this claim, I am denying the motion to dismiss without prejudice to the Defendants filing a further dispositive pleading in the form of a supplemented motion to dismiss, or motion for partial summary judgment. Any such motion shall be filed by January 28, 2011.

<u>*Whether Count III should be Dismissed for Lack of Subject Matter Jurisdiction*</u>

Thermospas asserts that the employment agreement entered into between the parties provides that Connecticut law shall apply to any disputes arising thereunder. Thermospas further argues that Ms. Marcimo's claim that she was constructively discharged in retaliation for filing a worker's compensation claim arose under the contract and applying Connecticut law, she is required to file this claim in Connecticut state court. Ms. Marcimo asserts that this Court should not consider the agreement because Thermospas did not provide an authenticated copy; considering it would turn the motion to dismiss into one for summary judgment; Thermospas' did not sign a copy of the document it provided to the Court; and Thermospas unilaterally cancelled the contract by terminating her full time employment and changing her status to part time.[11]

Thermospas's argument is nonsensical. The cited provision of the Connecticut workers' compensation statutory scheme provides, in relevant part, as follows:

> (a) No employer who is subject to the provisions of this chapter shall discharge, or cause to be discharged, or in any manner discriminate against any employee because the employee has filed a claim for workers' compensation benefits or otherwise exercised *the rights afforded to him pursuant to the provisions of this chapter.*
>
> (b) Any employee who is so discharged or discriminated against may either: (1) Bring a civil action in the superior court fo the judicial district where the employer has its principal office for ... .

Conn.Gen.Stat. §31-290a (emphasis added).

---

[11] Nowhere in the original employment agreement does it indicate that Ms. Marcimo was a full-time employee. Indeed, there is no indication of how many hours or days of the week Ms. Marcimo was required to work. Her pay was based totally on commission rather than any hourly wage. Because I find for Ms. Marcimo on other grounds, it is not necessary for me to resolve whether under these circumstances, Thermospas unilaterally cancelled the agreement.

It is uncontested that Ms. Marcimo filed her workers' compensation claim in Massachusetts, apparently with no objection by Thermospas. Since she did not exercise her rights under Conn.Gen.Stat. §31-290a, she is not only not required to file her claim in the Connecticut Superior Court, she would be jurisdictionally barred from doing so. Massachusetts analogous statute requires her to file her claim in Massachusetts. *See* Mass.Gen.L. ch. 152, §75B. Therefore, if I were to assume that the contract required that Connecticut law applied to this claim, Ms. Marcimo would be left without a remedy. Regardless of the enforceability of the parties' choice of law provision, considering the public policy ramifications, neither Massachusetts or Connecticut's conflict of law jurisprudence would countenance such an absurd result. In the alternative, I find that Ms. Marcimo's claim that she was retaliated against for filing a worker's compensation claim did no arise under the employment contract. For these reasons, Thermospas's motion to dismiss Count III is denied.

## **Conclusion**

Thermospas, Inc.'s Motion to Dismiss (Docket No. 24) is ***denied***, a provided in this Order.

/s/ Timothy S. Hillman
**TIMOTHY S. HILLMAN**
**MAGISTRATE JUDGE**